STATE OF MINNESOTA

IN SUPREME COURT

A14-0117

Hennepin County                                                                    Wright, J.

De-Aunteze Lavion Bobo, petitioner,

Appellant,

vs.                                                                    Filed:  March 11, 2015
                                                                    Office of Appellate Courts
State of Minnesota,

Respondent.

_____

De-Aunteze Lavion Bobo, Rush City, Minnesota, pro se.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

_____

S Y L L A B U S

The postconviction court did not abuse its discretion when it denied appellant's third and fourth petitions for postconviction relief.

Affirmed.

Considered and decided by the court without oral argument.

1

O P I N I O N

WRIGHT, Justice.

Appellant De-Aunteze Lavion Bobo challenges the denial of his third and fourth petitions for postconviction relief in this first-degree murder case. Following an evidentiary hearing, the postconviction court determined that, because the witnesses who testified on Bobo's behalf were not credible, the evidence that Bobo presented as newly discovered failed to satisfy the materiality requirement of the test announced in *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997). For the reasons that follow, we affirm.

As he sat in a parked vehicle on June 2, 2006, James Roberts was shot and killed.[1] Police later discovered the gun used in the June 2006 shooting when they arrested Leonard Slaughter on unrelated charges. Bobo, an associate of Slaughter, also was under investigation when Samuel James told police that Bobo had admitted his involvement in the June 2006 shooting. James repeated this statement in his grand jury testimony. At Bobo's trial, however, James refused to answer the prosecutor's questions and instead claimed that Bobo was innocent. The State offered as evidence James's grand jury testimony implicating Bobo and relied heavily on it as probative evidence of Bobo's guilt. The jury returned a guilty verdict and Bobo was convicted of first-degree murder while committing a drive-by shooting. The district court subsequently imposed a life sentence with the possibility of release.

---

[1]     Because the underlying facts in this case are set forth in detail in *State v. Bobo,* 770 N.W.2d 129, 133-37 (Minn. 2009), and *Bobo v. State*, 820 N.W.2d 511, 513-15 (Minn. 2012), we limit our discussion of the facts to those directly related to this appeal.

2

We affirmed Bobo's conviction. *State v. Bobo*, 770 N.W.2d 129, 133 Minn. 2009). Bobo subsequently filed several petitions for postconviction relief. In his third petition, Bobo asserted a claim of newly discovered evidence. This claim was based on affidavits submitted by D.T. and J.C. that alleged that James told them he was involved in the murder for which Bobo was convicted. The postconviction court denied the third petition without a hearing, concluding that the affidavits submitted by D.T. and J.C. contained cumulative evidence and inadmissible hearsay. We reversed and remanded to the postconviction court for an evidentiary hearing because the alleged confession was not cumulative and would be admissible if James testified at the postconviction evidentiary hearing about the alleged confession. *Bobo v. State*, 820 N.W.2d 511, 519-20 (Minn. 2012). Meanwhile, Bobo filed a fourth petition for postconviction relief, asserting additional newly discovered evidence based on an affidavit submitted by J.L. The affidavit stated that J.L. witnessed the murder and that Bobo was not present at the murder scene.

At the evidentiary hearing that followed, Bobo had an opportunity to establish the facts alleged in his third and fourth petitions for postconviction relief. Bobo did not present J.C.'s testimony. Instead, Bobo relied on the testimony of James, D.T., and J.L.

At the hearing, James did not confess to committing the June 2006 murder. D.T. testified that James had told him that James, rather than Bobo, was involved in the murder. In addition, J.L. testified that he witnessed the murder, and James—not Bobo—was present. After considering the witnesses' demeanor and the substance of their testimony, the postconviction court found that, because D.T. and J.L. were not credible,

3

Bobo failed to satisfy the materiality requirement of the newly discovered evidence test set forth in *Rainer,* 566 N.W.2d at 695.[2] Having determined that Bobo failed to satisfy the *Rainer* test, the postconviction court explained that Bobo had necessarily failed to satisfy the more stringent statutory standard for newly discovered evidence set forth in Minn. Stat. § 590.01, subd. 4(b)(2) (2014). Based on these credibility findings, the postconviction court denied Bobo's third and fourth petitions.

## I.

Bobo argues that the postconviction court abused its discretion when it denied his third petition for postconviction relief. The decision to grant a new trial based on a claim of newly discovered evidence rests within the discretion of the postconviction court. *State v. Bowles*, 530 N.W.2d 521, 534 (Minn. 1995). A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record. *Riley v. State*, 792 N.W.2d 831, 833 (Minn. 2011).

A defendant is entitled to a new trial on the basis of newly discovered evidence only if the defendant proves the following: "(1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result." *Rainer*, 566 N.W.2d at 695. The quantum of

---

[2] Because J.C. did not testify at the evidentiary hearing, the postconviction court did not assess his credibility.

4

proof required for each *Rainer* element is a fair preponderance of the evidence.[3]  *State v. Hurd*, 763 N.W.2d 17, 34 (Minn. 2009).

The postconviction court's decision rested on Bobo's failure of proof as to the third element of the *Rainer* test—materiality.  *See Tscheu v. State*, 829 N.W.2d 400, 403 (Minn. 2013).  To meet the materiality requirement, the evidence submitted must be credible.  *Race v. State*, 504 N.W.2d 214, 217-18 (Minn. 1993).  Because "[t]he postconviction court is in the best position to evaluate witness credibility," *Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013), we review its credibility determinations under the clearly erroneous standard.  *State v. Ali*, 855 N.W.2d 235, 245 (Minn. 2014).  This standard creates a "high threshold."  *State v. Williams*, 842 N.W.2d 308, 313 (Minn. 2014).  We will not disturb the postconviction court's findings of fact if "reasonable evidence" supports those findings.  *State v. Evans*, 756 N.W.2d 854, 870 (Minn. 2008) (quoting *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999)).

After considering the evidence presented at the postconviction hearing, the postconviction court found that the evidence offered by Bobo in support of his third petition (D.T.'s testimony about James's alleged confession) was not credible and, therefore, concluded that the third prong of the *Rainer* test was not met.  The

---

[3]  Bobo contends that in analyzing his third petition, the postconviction court erroneously required him to satisfy the clear-and-convincing standard of proof.  Having carefully reviewed the record, we conclude that it does not support Bobo's contention.  Although the postconviction court's order references the clear-and-convincing standard of proof, it does so in the context of the more stringent newly discovered evidence test set forth in Minn. Stat. § 590.01, subd. 4(b)(2).  We conclude, therefore, that the postconviction court properly applied the preponderance-of-the-evidence standard in analyzing Bobo's third petition.

postconviction court found that D.T. lacked credibility for several reasons, including his demeanor, the inconsistencies between his hearing testimony and his affidavit, his past felony convictions, and his gang memberships. The postconviction court specifically explained:

> [D.T.] struggled at times to testify consistently with his affidavit. He stuttered, hemmed and hawed, and had poor memory when questioned about details such as the details surrounding his decision to prepare the affidavit when he was at Rush City, and the details supposedly relayed by James about the shooting itself.

Because the postconviction court's conclusion that D.T. was not credible is not clearly erroneous, the postconviction court did not abuse its discretion when it denied Bobo's third petition for postconviction relief.[4]

II.

We next consider Bobo's argument that the postconviction court abused its discretion by denying his fourth petition for postconviction relief. Bobo's fourth petition alleges that J.L. witnessed the murder and that James was involved in the murder. Had the postconviction court found J.L.'s postconviction hearing testimony credible, the testimony might have "produce[d] an acquittal or a more favorable result." *Rainer*, 566 N.W.2d at 695. But after observing J.L. testify at the evidentiary hearing, the

---

[4] The postconviction court alternatively concluded that the out-of-court confession allegedly made by James was not admissible under the hearsay exception set forth in Minn. R. Evid. 804(b)(3). Bobo challenges this conclusion, arguing that the cell phone and reverse-*Spreigl* evidence presented at the evidentiary hearing satisfied the independent corroboration requirement of Rule 804(b)(3). Because our conclusion that the materiality requirement has not been met is dispositive, we need not address Bobo's claim that the postconviction court erred in its analysis of the hearsay exception.

postconviction court concluded that J.L.'s testimony was not credible. The postconviction court based this determination on J.L.'s explanation of the circumstances leading to his preparation of the affidavit for Bobo, J.L.'s "vague and contradictory" descriptions of the events on the night of the June 2006 murder, his confusion regarding the authorship of documents found in his prison cell, his membership in the Tre Tre Crips gang, and his prior felony convictions, including one for second-degree murder. Based on the record, the postconviction court's finding that J.L. was not credible is not clearly erroneous. Because "[t]he postconviction court is in the best position to evaluate witness credibility," *Miles*, 840 N.W.2d at 201, and the postconviction court's credibility determinations are not clearly erroneous, *Ali*, 855 N.W.2d at 245, the postconviction court did not abuse its discretion when it concluded that J.L.'s testimony was not credible and denied Bobo's fourth petition for postconviction relief.

## III.

In sum, the postconviction court did not abuse its discretion when it denied Bobo's third and fourth petitions for postconviction relief. The postconviction court concluded, based on its credibility determinations during the evidentiary hearing, that Bobo's newly discovered evidence did not meet the *Rainer* test. Therefore, the postconviction court properly denied Bobo's third and fourth petitions.

Affirmed.