*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1351**

Jeffrey Edward Morey, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed June 6, 2016
Affirmed
Peterson, Judge**

Winona County District Court
File No. 85-CR-14-1789

Andrew M. Irlbeck, Andrew Irlbeck Lawyer Chtd., St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Karin L. Sonneman, Winona County Attorney, Kevin P. O'Laughlin, Erin C. Stephens, Assistant County Attorneys, Winona, Minnesota (for respondent)

Considered and decided by Jesson, Presiding Judge; Peterson, Judge; and Kirk, Judge.

**U N P U B L I S H E D   O P I N I O N**

PETERSON, Judge

In this appeal from the denial of his postconviction motion to withdraw his guilty plea, appellant argues that his plea was inaccurate because it was not supported by a proper factual basis and was involuntary because he received ineffective assistance of counsel

before and during the plea hearing. Because appellant's plea was accurate and voluntary, we affirm.

**FACTS**

On July 23, 2014, law enforcement was called to investigate a report of suspected gunshots and was notified that a person wearing camouflage clothing may have fired the shots. Appellant Jeffrey Morey and two other men were present when law enforcement arrived at the scene, and Morey was wearing a camouflage jacket. The chief of police approached the men and asked whether anyone had a firearm, and Morey volunteered that he did have a firearm. The police chief removed a firearm from a holster inside Morey's clothing. A sheriff's deputy conducted a pat down of Morey and discovered a second firearm.

According to the complaint, the sheriff's deputy also discovered "a plastic bag that contained a small amount of suspected marijuana" and a "silver pipe [that] was of a type used to smoke marijuana" and "smelled of marijuana." Also according to the complaint, Morey "admitted [that] he last smoked marijuana the day before" and "told [the] Deputy that [he] uses marijuana to help him with pain in his back." Morey had a permit to carry a firearm, and law enforcement discovered that the suspected gunshots were actually the sound of a vehicle's tire being slashed.

Morey was charged with being an ineligible person in possession of a firearm (unlawful user of a controlled substance) under Minn. Stat. § 624.713, subd. 1(10)(iii) (2012). He moved for suppression of evidence and dismissal of the charge on the basis of an unconstitutional pat-down search. The district court denied the motion because it

2

determined that the pat down was supported by reasonable suspicion that Morey was engaged in criminal activity and was armed and dangerous.

Morey then signed a plea petition and agreed to plead guilty to the charged offense. In the plea petition, Morey: (1) acknowledged that he received and read a copy of the complaint and understood the charge; (2) confirmed that he was given sufficient time to discuss his case with an attorney and was satisfied with the representation provided by his attorney; (3) agreed to waive his right to a jury trial or court trial where the state would be required to prove his guilt beyond a reasonable doubt and where he could cross-examine the state's witnesses, call favorable witnesses, and choose whether to testify; and (4) affirmed that nobody made promises or threats to induce his plea.

During the plea hearing, Morey confirmed that he understood and was guilty of the charge and agreed to a sentence that included unsupervised probation, 20 hours of community service, and wearing a drug patch for six months. He also confirmed that he understood and wished to waive his rights to a trial and to remain silent. He acknowledged that he reviewed the plea petition with his attorney, read and understood it, and signed it that day. Morey then admitted that, on July 23, 2014, he had two firearms on his person and that an officer "frisked [him] and found a small amount of marijuana in [his] pocket." He acknowledged that he "admitted [to officers] that [he] had on occasion used marijuana to ease and relax the discomfort [he] feel[s in his] back," and he admitted that his use of marijuana is illegal.

The district court found that a proper factual basis supported Morey's plea and that the plea was knowing, intelligent, and voluntary. The court ordered Morey to complete

3

two years of unsupervised probation, and the terms of probation included performing 20 hours of community service, submitting to random drug and alcohol testing, and using a drug patch for six months.

Morey later moved to withdraw his guilty plea. He maintained that his plea was not supported by a proper factual basis because "there was no finding that he had used [marijuana] recently, that he was using it on the day of his arrest, when the last time he used it was, whether he used it regularly, or whether he had ever been treated for chemical dependency." He also maintained that he received ineffective assistance of counsel because his attorney failed to move to suppress the marijuana, failed to disclose a conflict of interest, failed to inform Morey that he would need to wear a drug patch as a condition of probation, and coerced Morey into pleading guilty.

During a hearing on his motion, Morey testified that his attorney told him before the plea hearing that he "did not have a right to a trial," "the Court [had] found [him] guilty," and he "ha[d] to plead guilty." Morey denied reading the plea petition or reviewing it with his attorney, and he testified that his attorney failed to inform him before the plea hearing that he would need to wear a drug patch as a condition of probation. The district court denied Morey's motion. The court determined that the plea was supported by a proper factual basis and that Morey's allegations against his attorney were not credible. This appeal follows.

## D E C I S I O N

"At any time the court must allow a defendant to withdraw a guilty plea upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to

4

correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *Barrow v. State*, 862 N.W.2d 686, 691 (Minn. 2015). To be valid, a guilty plea must be accurate, voluntary, and intelligent. *Id.*

"A defendant who seeks to withdraw his guilty plea under Rule 15.05 after sentencing must bring the motion to withdraw in a petition for postconviction relief." *State v. Hughes*, 758 N.W.2d 577, 582 (Minn. 2008). A denial of postconviction relief is reviewed for an abuse of discretion, with legal conclusions reviewed de novo and findings of fact reviewed for clear error. *McKenzie v. State*, 872 N.W.2d 865, 870 (Minn. 2015). "Determining the validity of a guilty plea presents a question of law subject to de novo review." *Barrow*, 862 N.W.2d at 689.

### 1. Accurate Plea

The requirement that a plea be accurate "protect[s] a defendant from pleading guilty to a more serious offense than he could be convicted of if he were to go to trial." *Matakis v. State*, 862 N.W.2d 33, 37 (Minn. 2015) (quotation omitted). A proper factual basis must be established for a plea to be accurate. *Barrow*, 862 N.W.2d at 691. A district court "should not accept a guilty plea unless the record supports the conclusion that the defendant actually committed an offense at least as serious as the crime to which he is pleading guilty." *Id.* (quotation omitted).

"The district court typically establishes a factual basis by asking the defendant to express in his own words what happened." *Id.* But "even if a district court does not elicit proper responses, a defendant may not withdraw his plea if the record contains sufficient evidence to support the conviction." *Lussier v. State*, 821 N.W.2d 581, 589 (Minn. 2012)

5

(quotations omitted) (stating that "the plea petition and colloquy may be supplemented by other evidence to establish the factual basis for a plea"). Minnesota courts reviewing the adequacy of a factual basis have looked to the complaint to supplement the defendant's admissions. *See, e.g.*, *State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983) ("The record also contains a copy of the complaint and defendant, by his plea of guilty, in effect judicially admitted the allegations contained in the complaint."); *Williams v. State*, 760 N.W.2d 8, 13 (Minn. App. 2009) ("[T]he sworn complaint, which was part of the record at the time of the plea and referred to at the plea hearing, summarizes witness testimony that showed, in all likelihood, that [defendant] committed both crimes."), *review denied* (Minn. Apr. 21, 2009).

A person "shall not be entitled to possess ammunition or a pistol or semiautomatic military-style assault weapon or . . . any other firearm" if he "is an unlawful user of any controlled substance as defined in chapter 152[.]" Minn. Stat. § 624.713, subd. 1(10)(iii); *see also* Minn. Stat. § 152.02, subd. 2(h) (Supp. 2013) (classifying marijuana as a Schedule I controlled substance). Morey admitted during the plea hearing that he had two firearms and a small amount of marijuana on his person on July 23, 2014. He acknowledged that he "admitted [to officers] that [he] had on occasion used marijuana to ease and relax the discomfort [he] feel[s in his] back," and he also acknowledged that his use of marijuana is illegal.

The state alleged in the complaint that the sheriff's deputy who conducted the pat down and discovered the marijuana also discovered a "silver pipe [that] was of a type used to smoke marijuana" and "smelled of marijuana." The state further alleged in the complaint

that Morey "admitted [that] he last smoked marijuana the day before" and that he "told [the] Deputy that [he] uses marijuana to help him with pain in his back." By signing the plea petition, Morey acknowledged that he "ha[d] received, read and discussed a copy of the Complaint" and "underst[oo]d the charges made against [him] in this case." The district court referred to the complaint during the plea hearing and confirmed with Morey that he understood the charge.

Morey contends that the factual basis is insufficient to establish that "he possessed a firearm at the same time that he was a controlled substance user." He maintains that his acknowledgment during the plea hearing that he "had on occasion used marijuana" establishes only that he "used marijuana . . . at some time in the past" and not necessarily when he possessed a firearm. But during the plea hearing, Morey clearly conveyed to the district court that he was a current controlled-substance user and used marijuana for his back pain. And the complaint provides additional evidence that Morey was a current marijuana user. The record contains a proper factual basis to support the conclusion that Morey committed the charged offense, and his guilty plea was accurate.

*2. Voluntary Plea*

Morey argues that his guilty plea was involuntary because, for several reasons, he received ineffective assistance of counsel. The requirement that a plea be voluntary "ensures a defendant is not pleading guilty due to improper pressure or coercion." *State v. Raleigh*, 778 N.W.2d 90, 96 (Minn. 2010). "To satisfy a claim of ineffective assistance of counsel, (1) the defendant must prove that counsel's representation fell below an objective standard of reasonableness; and (2) the defendant must prove there was a reasonable

7

probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Taylor*, 869 N.W.2d 1, 21 (Minn. 2015) (quotation omitted) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 2064-69 (1984)).

"When an accused is represented by counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994) (quotations omitted). "The objective standard of reasonableness is defined as representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *State v. Vang*, 847 N.W.2d 248, 266 (quotations omitted). "In cases in which the [defendant] pleads guilty, the [defendant] must demonstrate a reasonable probability that, but for counsel's ineffective representation, he would not have entered his plea." *Johnson v. State*, 673 N.W.2d 144, 148 (Minn. 2004). An appellate court may dispose of an ineffective-assistance-of-counsel claim on one prong of the *Strickland* analysis without considering the other prong. *Nissalke v. State*, 861 N.W.2d 88, 94 (Minn. 2015).

### a. Coercion to plead

Morey contends that the representation provided by his attorney was ineffective and he was coerced into pleading guilty because his attorney told him "that the court had decided he was guilty, that he had no right to a trial, and that his only option was to plead guilty to the charged offense." He further contends that his attorney did not show him a copy of the plea petition or review the petition with him and only directed him to sign the last page of the petition. Morey relies on his own testimony and affidavit to support his

assertions that he was coerced into pleading guilty.  But the district court determined that these assertions were contradicted by the record and were not credible.  "Because the postconviction court is in the best position to evaluate witness credibility, [an appellate court] review[s the] credibility determinations under the clearly erroneous standard." *Bobo v. State*, 860 N.W.2d 681, 684 (Minn. 2015) (quotation and citation omitted); *see also State v. Ali*, 855 N.W.2d 235, 245 (Minn. 2014) ("In order for a credibility determination to be clearly erroneous, we must be left with the definite and firm conviction that a mistake has been made." (quotation omitted)).

Morey acknowledged during the plea hearing that he reviewed the plea petition with his attorney and read, understood, and signed the petition.  The plea petition informed Morey that he had a right to a jury trial or court trial where the state would be required to prove his guilt beyond a reasonable doubt and where he could cross-examine the state's witnesses, call favorable witnesses, and choose whether to testify.  Morey confirmed during the plea hearing that he understood and wished to waive his right to a trial.  Based on this record, we are not left with a definite and firm conviction that the district court was mistaken when it determined that Morey's allegations of coercion by his attorney were not credible.  Morey has not proved that his attorney provided representation that fell below an objective standard of reasonableness.

#### b. Drug patch

Morey asserts that his attorney provided ineffective assistance by failing to inform him that he would need to wear a drug patch as a condition of probation.  "To determine whether a plea is voluntary, the court examines what the parties reasonably understood to

be the terms of the plea agreement." *Raleigh*, 778 N.W.2d at 96. During the plea hearing, Morey's attorney recited the terms of the plea agreement and the stipulated sentence, which included that Morey "w[ould] utilize the drug patch for a period of six months." The district court then confirmed with Morey that he wished to plead guilty and that he agreed to the sentence. Morey did not object or ask questions when his attorney mentioned the drug patch or when the district court ordered him to wear a drug patch for six months. Even if Morey and his attorney did not discuss a drug patch before the plea hearing, Morey stated during the plea hearing that he wished to plead guilty, and he proceeded to plead guilty, knowing that wearing a drug patch for six months would be a condition of probation. Morey has not demonstrated a reasonable probability that, but for the alleged failure by his attorney, he would not have pleaded guilty.

### c. Conflict of interest

Morey argues that he received ineffective legal representation because his attorney "very likely" simultaneously represented Morey and one of the sheriff's deputies who was at the scene of the pat down, which created a conflict of interest. "A lawyer's performance is deficient if he represents a client despite having a conflict of interest." *State v. Paige*, 765 N.W.2d 134, 140 (Minn. App. 2009) (citing *Wood v. Georgia*, 450 U.S. 261, 271-72, 101 S. Ct. 1097, 1103-04 (1981)); *see also* Minn. R. Prof. Conduct 1.7(a) (stating that conflict of interest exists if "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a personal interest of the lawyer").

10

Morey contends that Winona County Sheriff's Deputy Morken was at the scene of the pat down. Morey provides no support for this assertion, and the documents and testimony in the record do not indicate that Morken was at the scene. Furthermore, Morey presumes that his attorney was simultaneously representing Morey and Morken because Morken allegedly committed crimes before Morey's case was resolved. But Morey acknowledges that he does not know when his attorney began representing Morken, and Morey's attorney filed a certificate of representation in Morken's case after Morey's plea and sentencing hearing were completed. Morey has not established that a conflict of interest existed and has not proved that his attorney's representation fell below an objective standard of reasonableness.

*d. Motion to suppress*

Finally, Morey argues that his attorney provided ineffective assistance by failing to move to suppress the marijuana discovered on his person. He contends that, if his attorney had brought such a motion, there is a reasonable probability that the case against him would have been dismissed. Although Morey's memorandum on his suppression motion focused on the discovery of the firearms, he moved to suppress "any evidence against [him] obtained as the result of" the pat down. The district court ruled that the pat down was supported by reasonable suspicion that Morey was engaged in criminal activity and was armed and dangerous.

Morey could have appealed the court's suppression order but did not do so. Although Morey testified during the postconviction hearing that his attorney coerced him into pleading by telling him that he could not appeal the suppression order, the district court

11

determined that Morey's assertions of pressure and coercion by his attorney were not credible. As we have already stated, this credibility determination was not clearly erroneous. Morey has not proved that his attorney provided ineffective assistance by failing to move to suppress the marijuana.

Morey has not established that he received ineffective assistance of counsel. Because Morey's guilty plea was both accurate and voluntary, we affirm the district court's denial of his motion to withdraw his plea.

**Affirmed.**