*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1960**

State of Minnesota,
Respondent,

vs.

Tieshawn Stevie Fields,
Appellant.

**Filed January 5, 2026
Affirmed
Jesson, Judge[*]**

Hennepin County District Court
File No. 27-CR-24-9368

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Shannon M. Harmon, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leah C. Graf, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Bratvold, Judge; and Jesson, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JESSON**, Judge

Appellant Tieshawn Stevie Fields pleaded guilty to felony domestic assault after assaulting his romantic partner at her workplace. Before sentencing, Fields moved to withdraw his plea because he was no longer interested in the terms offered by respondent State of Minnesota. The district court denied the request, reasoning that "changing [one's] mind" is not a valid basis to withdraw a plea under the fair-and-just standard. Fields appeals. Because Fields failed to establish reasons to justify withdrawal of his plea under the fair-and-just standard, and because he is not entitled to withdraw his guilty plea under the manifest-injustice standard, we affirm. In so doing, we also reject Fields's claim that the district court judge committed a structural error by conducting an independent investigation, as the record conclusively shows that the judge merely reviewed the record in Fields's current case.

## FACTS

In April 2024, a woman was working at her job in a hotel when her boyfriend, Fields, arrived at the hotel, jumped over the counter that divided the employees from the customers, and began punching her. The complaint asserted that Fields became angry because the victim told him over the phone that she was ending the relationship. According to the complaint, Fields punched her with closed fists and continued to punch her after she fell to the floor. Police officers went to the hotel in response to the emergency call. Officers spoke with the victim and noticed that she had a large bump over her left eye that was protruding and swollen. The victim reportedly told police that she feared Fields was

2

going to kill her. The state charged Fields with felony domestic assault for this incident. *See* Minn. Stat. § 609.2242, subd. 4 (2022).

Fields agreed to plead guilty to felony domestic assault. In exchange for his guilty plea, the state agreed to recommend a stayed prison sentence. At the plea hearing, Fields provided a factual basis and admitted that he assaulted the victim, resulting in an injury to her face. Counsel for the state asked Fields, "[Y]ou punched [the victim] with a closed fist on her face; is that correct?" Fields admitted, "I punched her. And when she fell. She fell on her head." Fields also admitted that he had two previous qualifying convictions within the last ten years. The district court concluded that there was a sufficient factual basis and ordered a presentence investigation report (the PSI).

Prior to sentencing, Fields asked to withdraw his guilty plea under the fair-and-just standard. The state opposed the request. The district court denied Fields's plea-withdrawal request, finding that he admitted facts supporting his guilty plea and did not articulate a basis for withdrawal. At the sentencing hearing, Fields again asked the district court to allow him to withdraw his guilty plea. The district court denied the request and imposed a stayed sentence.

Fields appeals.

## DECISION

### I. Fields is not entitled to withdraw his plea.

A defendant does not have an absolute right to withdraw a guilty plea. *Taylor v. State*, 887 N.W.2d 821, 823 (Minn. 2016) (quotation omitted). However, plea withdrawal is permitted under two circumstances. *State v. Raleigh*, 778 N.W.2d 90, 97

3

(Minn. 2010). A district court may allow a defendant to withdraw a plea before sentencing if it is fair and just to do so. Minn. R. Crim. P. 15.05, subd. 2. We review a district court's application of the fair-and-just standard for an abuse of discretion, and we will rarely reverse that decision. *State v. Lopez*, 794 N.W.2d 379, 382 (Minn. App. 2011). Additionally, a defendant must be allowed to withdraw a guilty plea at any time to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1. We review the constitutional validity of a guilty plea under this standard de novo. *Raleigh*, 778 N.W.2d at 94.

Here, Fields seeks to withdraw his guilty plea on both grounds. He requested to withdraw his plea under the fair-and-just standard, but the district court denied the request. Fields did not seek to withdraw his plea under the manifest-injustice standard in district court and we address that basis for the first time on appeal. For the reasons discussed below, we conclude that Fields is not entitled to plea withdrawal under either test.

### A. Fair-and-Just Standard

The test for withdrawal of a plea under the fair-and-just standard is less burdensome than under the manifest-injustice standard. *State v. Townsend*, 872 N.W.2d 758, 764 (Minn. App. 2015). Yet the fair-and-just standard does not permit plea withdrawal for simply any reason. *Id.* To evaluate Fields's argument, we consider: (1) the reasons Fields advances to support withdrawal of the plea, and (2) whether granting the motion prejudices the state. Minn. R. Crim. P. 15.05, subd. 2. Fields bears the burden of providing substantiated reasons for withdrawal, and the state bears the burden to show prejudice. *Raleigh*, 778 N.W.2d at 97. But even if the state fails to show prejudice, a district court may deny the motion if the defendant fails to demonstrate that withdrawal is fair and just.

4

*Id.* at 98.  Ultimately, the decision of whether to withdraw a presentence guilty plea "is left to the sound discretion" of the district court and will be reversed only in rare cases. *Kim v. State*, 434 N.W.2d 263, 266 (Minn. 1989).

Fields sought to withdraw his plea because the victim recanted and Fields wanted an opportunity to contest the state's charge in light of this recantation.  The district court characterized Fields's request as a "change of heart" and found that Fields had not met the standard for plea withdrawal.  Specifically, the district court determined that Fields had not met his burden of advancing reasons that would support plea withdrawal because he admitted facts sufficient for the court to believe he was guilty of the offense.

Because the record shows that Fields admitted facts under oath supporting a finding of guilt, we discern no abuse of discretion.

Here, Fields was charged with felony domestic assault.  To sustain a conviction for this offense, the state was required to prove that Fields inflicted bodily harm against a family or household member within ten years of two or more other qualified offenses.  Minn. Stat. § 609.2242, subd. 4.  At the plea hearing, Fields admitted that he was in a romantic relationship with the victim and was living with her at the hotel during the relevant time period.  He admitted that he punched the victim with a closed fist on her face, which caused her to fall.  The victim injured her face when she fell.  Fields also admitted that he had two prior convictions for domestic assault from 2015, which was within ten years of the current offense.  Fields's admissions at the plea hearing support a finding that he was guilty of felony domestic assault.

In denying Fields's plea-withdrawal request, the district court determined that it was not fair and just to allow Fields to withdraw his guilty plea based upon the witness's recantation. The district court also noted that the victim's original statements were consistent with the victim's injuries that the police officers observed when they went to the hotel. On appeal, Fields asserts that the district court took on the role of the fact-finder to determine the "truth" of whether Fields was guilty of felony domestic assault. By placing the burden on Fields to "prove his innocence," Fields claims the district court committed an error of law.

We are not persuaded by this argument. Here, as the district court noted in making its decision, it "credit[ed] the statements" that Fields made under oath, but did not credit his "subsequent protestations of innocence." District courts, in assessing whether it is fair and just to permit plea withdrawal, are entitled to make credibility assessments. *State v. Jones*, 921 N.W.2d 774, 782-83 (Minn. App. 2018), *rev. denied* (Minn. Feb. 27, 2019).[1] And we defer to those assessments. *Id*. On this record, we conclude that the district court did not abuse its discretion by determining that Fields did not present a fair-and-just reason to withdraw his guilty plea.

Fields also argues that the district court erred in determining that the state would be prejudiced by a plea withdrawal. This court has held, however, that the district court may

---

[1] In *Jones*, the defendant was arrested for violating a condition of release. *Id.* at 778. He sought to withdraw his guilty plea before sentencing, arguing that he was under the influence of narcotics at the time of the plea. *Id.* The district court found his testimony regarding narcotics use not credible and denied his motion. *Id.* We deferred to the district court's credibility determinations and found no abuse of discretion, and we therefore affirmed. *Id.* at 782-83.

6

deny plea withdrawal under the fair-and-just standard even when there is no prejudice to the state, if the defendant fails to show valid reasons to support withdrawal. *State v. Cubas*, 838 N.W.2d 220, 224 (Minn. App. 2013), *rev. denied* (Minn. Dec. 31, 2013). Because the district court did not abuse its discretion in determining that Fields failed to present a fair-and-just reason for plea withdrawal, we need not address whether the district court erred in its prejudice determination.

## B. Manifest-Injustice Standard

A manifest injustice exists if a defendant's guilty plea is not valid. *Barrow v. State*, 862 N.W.2d 686, 691 (Minn. 2015). A valid guilty plea must be accurate, voluntary, and intelligent. *Id.* at 689. The validity of a guilty plea is a question of law that we review de novo. *Raleigh*, 778 N.W.2d at 94. Here, Fields argues only that his plea was not voluntary or accurate, thus we focus our analysis on those factors.

### i. Field's Plea Was Voluntary

The requirement that a plea be voluntary ensures that a defendant does not plead guilty because of improper pressure or coercion. *Id.* at 96. Improper pressure or coercion generally comes from an external source, such as a threat or promise made to induce a defendant to plead guilty. *Nelson v. State*, 880 N.W.2d 852, 861 (Minn. 2016). Whether a plea is voluntary is determined by considering all of the relevant circumstances. *State v. Ecker*, 524 N.W.2d 712, 718-19 (Minn. 1994). However, there is no basis for plea withdrawal if the defendant is sentenced in accordance with the plea agreement. *See State v. Hamacher*, 511 N.W.2d 458, 460 (Minn. App. 1994).

7

Fields argues that his plea was involuntary because the district court improperly participated in the plea negotiations by adding a condition to the plea agreement. It is well established that a district court must not participate in plea negotiations. *Wheeler v. State*, 909 N.W.2d 558, 564 (Minn. 2018). This includes a prohibition on judicial officers proposing plea deals that have not been contemplated by the parties. *Id.* at 567. Whether the district court impermissibly intervened in plea negotiations is a question of law, which we review de novo. *Id.* at 568. If we determine that the district court improperly participated in plea negotiations, we next examine the totality of the circumstances to determine whether the resulting guilty plea was voluntary. *Id.* at 567-68.

We begin our analysis centered on the plea agreement here. A guilty plea agreement includes both the terms of a written plea agreement as well as any terms clearly and unequivocally expressed by the parties at a plea hearing. *See In re Ashman*, 608 N.W.2d 853, 858 (Minn. 2000) (noting that the terms of the defendant's plea agreement were clearly expressed at the plea hearing); *see also* Minn. R. Crim. P. 15.01, subd. 1 (stating that at the plea hearing, the defendant must be questioned on their understanding of the terms of the plea agreement). We therefore consider both the written plea agreement and any oral agreements expressed at the plea hearing to determine the parties' understanding of Fields's plea agreement. In this written plea agreement, Fields agreed to plead guilty to felony domestic assault and the state agreed to recommend a stay of execution. At the hearing, the district court also ordered Fields to comply with certain probationary conditions, including remaining law abiding and cooperating with probation.

8

After the factual basis for the plea was established at the hearing, defense counsel requested that Fields be removed from electronic home monitoring (EHM). The district court stated, "if he isn't going to be on [EHM], my preference would be to convert the plea to something conditional." Defense counsel responded that the defense "[had] no issue with that." The district court explained to Fields that if he failed to appear for the PSI or violated the conditions of his release, his "plea would stay in place, but [the court] would essentially be able to sentence [Fields] without regard to that 60-day jail cap." Fields stated that he understood and was "willing to abide by all court recommendations." The district court then agreed to eliminate the EHM requirement.

The parties dispute whether the district court's statements amounted to an impermissible intrusion into the plea-negotiation process. Fields argues that his plea was involuntary because the district court participated in the plea negotiations, while the state argues that the district court did not participate in the plea negotiation because it was explaining a condition of Fields's release. While we caution district courts to be precise in their language, we ultimately agree with the state.

When reviewing a plea agreement and its conditions, we look at what the parties reasonably understood to be the terms of their agreement. *State v. Wukawitz*, 662 N.W.2d 517, 527 (Minn. 2003). Here, Fields agreed to plead guilty and the state agreed to recommend a stayed prison sentence. During the plea hearing, Fields consented to a waiver of his trial rights and admitted that he went through the plea petition "line by line" with his attorney. And it was the *defense*, not the district court, that proposed releasing Fields from

9

EHM, which benefitted Fields. This condition was discussed at the plea hearing and Fields indicated that he understood the district court's explanation.

We agree with Fields that the district court's statement that it would "convert" the plea agreement was improvident because a district court should not participate in the plea-bargaining negotiation itself. *Wheeler*, 909 N.W.2d at 564. Yet viewing the totality of the circumstances, we are satisfied that the district court was not proposing a plea agreement but was instead discussing a condition of release, which was within the purview of the district court. We therefore conclude that Fields's plea was voluntary.

### ii.     Fields's Plea Was Accurate

An accurate guilty plea requires a factual basis demonstrating that the defendant's conduct meets all the elements of the offense to which the defendant is pleading guilty. *Jones*, 921 N.W.2d at 779. The adequacy of the factual basis is usually established by the defendant explaining the circumstances surrounding the crime. *Ecker*, 524 N.W.2d at 716. We review the sufficiency of the factual basis from the record made when the defendant entered the plea. *State v. Lillemo*, 410 N.W.2d 66, 69 (Minn. App. 1987).

Here, Fields pleaded guilty to felony domestic assault and his plea is supported by a proper factual basis. Fields acknowledged that he went to the hotel where his romantic partner worked and assaulted her, causing her physical harm. He further acknowledged that he has two prior convictions for domestic-assault-related offenses from 2015. In response to a question from counsel, Fields admitted, "I punched her. And when she fell. She fell on her head." The facts admitted at the plea hearing support Fields's plea to felony

10

domestic assault and plea withdrawal is not necessary to correct a manifest injustice. *See* Minn. Stat. § 609.2242, subd. 4 (articulating elements of felony domestic assault).

To persuade us otherwise, Fields raises three arguments. First, he argues that his plea was inaccurate because the factual basis relied on leading questions. Second, he asserts that he made statements negating an essential element of the offense. Third, Fields contends that his plea was inaccurate because the victim recanted her allegations. For the reasons set forth below, these arguments are not persuasive.[2]

With regard to the use of leading questions, we note that the supreme court cautions against relying solely on leading questions to establish a factual basis for a guilty plea. *State v. Jones*, 7 N.W.3d 391, 396 (Minn. 2024). But a defendant is not entitled to withdraw a guilty plea simply because counsel used leading questions if there is sufficient evidence in the record to support the conviction. *Raleigh*, 778 N.W.2d at 94; *Barnslater v. State*, 805 N.W.2d 910, 914 (Minn. App. 2011) (noting that the use of leading questions, while disfavored, does not automatically entitle the defendant to withdraw a plea). Fields admitted that he went to his partner's workplace and assaulted her, causing her harm. As he stated in his own words, "I punched her. And when she fell. She fell on her head." Counsel's use of leading questions to establish some of the elements of the offense does not, by itself, invalidate Fields's guilty plea.

---

[2] The state argues that Fields failed to preserve this issue for appeal. Assuming without deciding that Fields did not forfeit the issue, we nevertheless determine that Fields gave a proper factual basis for his plea and, for the reasons set forth in this section, none of his arguments convince us otherwise.

Nor is Fields's plea inaccurate because he negated an essential element of the crime. A factual basis is inadequate if the defendant makes a statement negating an essential element of the offense, unless the statement is subsequently withdrawn or rehabilitated. *Jones*, 7 N.W.3d at 396. Here, Fields did not make any statements during the plea colloquy negating elements of the crime. However, Fields points to the PSI report, in which the probation agent noted that Fields "adamantly denie[d]" the allegations and stated that he pleaded guilty only to get out of jail. Fields argues that this court has previously considered the statements in a PSI as part of the factual basis for a plea that has yet to be accepted and urges us to do so here when evaluating the accuracy of the plea.

Given that Fields does not identify binding authority to support this approach, we construe his argument as an invitation to extend *Jones*. In that case, the supreme court determined that the defendant's guilty plea was inaccurate because his answers to leading questions were insufficient to rehabilitate his *earlier* assertions of innocence during the plea colloquy. *Id.* at 398-99. *Jones* did not involve subsequent assertions of innocence during a PSI interview. To the extent Fields asks us to expand *Jones* to include consideration of statements in a PSI as a means of establishing or negating an element of an offense, we decline to do so. Such arguments are more properly addressed to the supreme court or to the legislature, who are tasked with extending existing law. *See State v. Thomas*, 890 N.W.2d 413, 420 (Minn. App. 2017), *rev. denied* (Minn. Mar. 28, 2017).

Finally, Fields argues that his plea was not accurate because the victim recanted her allegations. At sentencing, the victim provided a victim-impact statement and asserted that

12

Fields did not assault her. However, Minnesota courts are generally hesitant to allow a defendant to withdraw a guilty plea based on a victim's recantation. *See, e.g.*, *State v. Tuttle*, 504 N.W.2d 252, 256-57 (Minn. App. 1993) (determining that the victim's recantation did not entitle the defendant to plea withdrawal). And we have also held that a district court does not err in accepting a guilty plea despite a witness's recanted testimony if there is a sufficient factual basis for the guilty plea. *State v. Risken*, 331 N.W.2d 489, 490 (Minn. 1983). Because Fields's guilty plea is supported by a sufficient factual basis, we decline to reverse on the ground that the victim recanted.

In sum, we conclude that Fields is not entitled to withdraw his guilty plea under the manifest-injustice standard because his plea is voluntary and accurate.

## II. The district court judge did not commit a structural error.

Fields argues that the district court judge committed a structural error by independently investigating facts outside the record to determine whether he was entitled to withdraw his guilty plea, which deprived him of his constitutional right to an impartial judge.

The United States and Minnesota Constitutions guarantee criminal defendants the right to be tried by an impartial jury. U.S. Const. amend. VI; Minn. Const. art. I, § 6. This includes the right to a fair and impartial judge. *State v. Duol*, 25 N.W.3d 135, 141 (Minn. 2025). This requirement ensures that the fact-finder's conclusions are based on the facts in evidence, rather than on evidence obtained beyond that presented in court. *State v. Dorsey*, 701 N.W.2d 238, 249-50 (Minn. 2005). We apply a de novo standard of review when considering whether a district court deprived a defendant of the constitutional

13

right to an impartial judge. *Id.* at 249. If a defendant has been deprived of the constitutional right to an impartial judge, the error is a structural error that requires reversal and remand without regard for whether the defendant was prejudiced by the error. *Id.* at 253.

Fields suggests that the district court judge independently investigated the facts by listening to an audio recording of an earlier court proceeding in his case after, at sentencing, Fields urged the court to reconsider his earlier request to withdraw his guilty plea. In denying this motion, the district court noted that it "went back and . . . actually listened to the audio recording of [Fields's] plea hearing" and heard Fields waive his trial rights and admit guilt. And the district court stated that the version of events that Fields swore to under oath was "actually the version of events that is consistent with the physical injuries that were observed by the police when they responded to th[e] scene of this incident." The "physical injuries" referred to the statement in the complaint that police officers observed "a large bump" over the victim's "left eye that was protruding and swollen."

On appeal now, Fields argues that the district court judge's conduct deprived him of his right to an impartial fact-finder. Certainly, judges are prohibited from engaging in an independent investigation of facts in evidence. *Duol*, 25 N.W.3d at 141. In *Duol*, for example, the district court investigated extra-record details about a witness's criminal history that were not part of the postconviction record. *Id* On appeal, Duol argued that the judge's conduct deprived him of his constitutional right to an impartial judge. *Id.* at 141-42. The supreme court agreed and determined that Duol was entitled to a new evidentiary hearing before an impartial judge. *Id.* at 144. Similarly, the supreme court likewise determined that the district court judge committed a structural error in *Dorsey*. 701 N.W.2d

14

at 241.  In that case, the district court judge instructed her clerk to investigate whether a witness's testimony was accurate by reviewing the witness's court records in another action.  *Id.* at 243-44.  The judge then partially relied on this information in finding that the witness lacked credibility and convicted Dorsey of the charged crime.  *Id.* at 244-45.  The supreme court concluded that the district court judge violated Dorsey's right to an impartial judge and reversed and remanded for a new trial.  *Id.* at 253.

The circumstances presented in Fields's case are a far cry from the cases in which appellate courts have reversed and remanded for a structural error due to an improper investigation into facts not adduced in court.  Here, the district court judge reviewed an audio recording of a hearing in the same matter.  But it did not seek or obtain extra-record evidence beyond that adduced in court.  *See id.* at 249-50.  Rather, it reviewed evidence that had already been presented by the parties.  Fields cites no authority for his argument that a review of an audio recording from an earlier proceeding before the same judge, in the same case, constitutes an impermissible investigation.  And we are likewise unpersuaded by Fields's argument that a district court judge may rely only on a transcript of an earlier proceeding, which neither party ordered in this case.  The law recognizes no distinction between a district court's review of a transcript and of an audio recording, and we decline to recognize it for the first time here.

We therefore conclude that the district court judge did not commit a structural error by reviewing an audio recording of the guilty plea hearing when considering a motion for a presentence plea withdrawal, and we therefore affirm.

**Affirmed.**

15