*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0387**

State of Minnesota,
Respondent,

vs.

James Allan Denker,
Appellant.

**Filed January 12, 2026
Affirmed
Connolly, Judge**

Goodhue County District Court
File No. 25-CR-24-1343

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Stephen F. O'Keefe, Goodhue County Attorney, Christopher J. Schrader, Assistant County Attorney, Red Wing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Gina D. Schulz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Wheelock, Presiding Judge; Connolly, Judge; and Bond, Judge.

**NONPRECEDENTIAL OPINION**

**CONNOLLY**, Judge

In this appeal from his judgment of conviction, appellant James Allen Denker challenges the validity of his guilty plea, arguing that it was (1) inaccurate and (2) involuntary. Appellant argues that he is entitled to withdraw his plea because the factual

basis supporting his plea of guilt to fifth-degree possession of a controlled substance does not establish that he knowingly possessed methamphetamine. He also argues that his plea was not voluntary. We affirm.

**FACTS**

The facts of this case are undisputed. The complaint alleges that on July 21, 2024, appellant was a passenger in a truck registered to him that was pulled over by police. When the police officer ran appellant's name in his squad car's database, he learned that the driver had an active harassment restraining order against appellant. The officer also determined that the driver's driving status was revoked. The officer arrested appellant for the restraining-order violation and decided to have the truck towed because there was no legal driver present to drive the vehicle away and the vehicle was near the fog line. During an inventory search of the truck, the officer found methamphetamine pipes, other drug paraphernalia, and two vials containing a combined total of 4.69 grams of methamphetamine. The driver told the officer that the drugs belonged to appellant. When the officer asked appellant if the methamphetamine was his, appellant said "yeah" and reported that he struggled with substance use. Based on these allegations, respondent state of Minnesota charged appellant with one count of felony violation of a harassment restraining order, two counts of felony fifth-degree possession of a controlled substance, one count of possession of open cannabis package in a motor vehicle, and one count of failure to illuminate rear license plate. *See* Minn. Stat. §§ 609.748, subd. 6(d), 152.025, subd. 2(a)(1), 169A.36, subd. 3(3), 169.50, subd. 2 (2022).

Appellant appeared for three hearings before pleading guilty to one count of fifth-degree possession of a controlled substance. At the second hearing, appellant reported that he wanted to discharge his public defender. Appellant was sworn, and the district court asked if appellant, who qualified for a public defender, intended to hire a private attorney. Appellant responded: "Apparently that's the way I guess I'm going to go, yes." The district court informed appellant that he would have to represent himself if he discharged the public defender and then could not afford a private attorney. Appellant indicated that he would be happy to continue the hearing before firing his public defender. The district court asked what appellant's plan would be if he found that he could not afford an attorney. Appellant responded: "I mean, obviously the Public Defender's Office would probably do a better job, but if the public defender that I'm assigned is unwilling to fight the case for me . . . ." The district court granted a 30-day continuance for appellant to look for private counsel. When appellant appeared again at the end of the 30-day continuance, he did not mention discharging his public defender or provide an update on his attempts to hire private counsel.

At the last hearing, the parties announced they had reached an agreement: appellant would plead guilty to one count of fifth-degree possession of a controlled substance, and, in exchange, the state agreed to a stay of imposition of sentence for up to five years and to dismiss the remaining charges. Conditions of the stay of imposition were that appellant must: undergo a chemical dependency evaluation and follow the resulting recommendations; comply with all probation rules and regulations, including following any probationary agreements and signing releases of information; abstain from the use or possession of alcohol or controlled substances; submit to random alcohol and drug testing;

refrain from driving without a valid driver's license or insurance; avoid alcohol- or drug-related traffic offenses; participate in cognitive skills training; submit a DNA sample when directed; refrain from possessing firearms, ammunition, or explosives; and remain law abiding. As a part of his plea, appellant's counsel had appellant provide a factual basis:

> Q: [Appellant], let's talk about July 21st of . . . 2024, were you a passenger in a vehicle here in Vasa Township, Goodhue County, Minnesota?
> A: Yes, I was.
>
> Q: That vehicle was pulled over, is that correct?
> A: Yes, it was.
>
> Q: And the officer ultimately searched the vehicle and obtained a baggie with a crystal-like substance in it?
> A: Yeah, a container.
>
> Q: Yes.
> A: Yeah.
>
> Q: And that substance was methamphetamine, is that correct?
> A: Yes, it was.
>
> Q: And do you agree that that methamphetamine weighed 4.69 grams without packaging?
> A: That is what I'm to understand.
>
> Q: And you didn't have any legal excuse for possessing that methamphetamine?
> A: No, I did not.
>
> Q: And in that encounter with the officer, you specifically told the officer that it was – it was your drugs?
> A: That is correct.

The district court then asked appellant a question, which he answered.

> THE COURT: All right. With respect to the stop itself, and why the officer stopped you, do you understand that he stopped your vehicle and even expanded the search, you understand

4

any of those arguments you might have to that are gone with this plea, do you understand that?

A: Yeah, unfortunately, I do understand that. Yeah.

The district court accepted appellant's plea, stayed imposition of sentence for up to five years, and dismissed the remaining charges. This appeal followed.

## DECISION

Appellant argues that he is entitled to plea withdrawal because his guilty plea to felony fifth-degree possession of a controlled substance was invalid. The validity of a guilty plea is a question of law that this court reviews de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010).

Here, appellant is trying to withdraw his plea after sentencing. A defendant does not have an absolute right to withdraw his guilty plea, but a defendant must be allowed to withdraw a guilty plea if "'withdrawal is necessary to correct a manifest injustice.'" *Id.* (quoting Minn. R. Crim. P. 15.05, subd. 1). "A manifest injustice exists if a guilty plea is not valid." *Id.* To be valid, a guilty plea must be accurate, voluntary, and intelligent. *Id.* (citing *State v. Trott*, 338 N.W.2d 248, 251 (Minn.1983)). To satisfy the manifest-injustice standard, a defendant bears the burden of proving that his plea was invalid because it was inaccurate, involuntary, or unintelligent. *Id.*; *Dikken v. State*, 896 N.W.2d 873, 879 (Minn. 2017).

Appellant argues that a manifest injustice exists because his guilty plea was invalid. Specifically, appellant argues his guilty plea was (1) inaccurate and (2) involuntary.

5

## I.    Accuracy

Appellant argues that his plea was invalid because it was inaccurate. For a plea to be accurate, it "must be established on a proper factual basis." *Raleigh*, 778 N.W.2d at 94 (citing *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994)).  A factual basis is adequate when the record contains facts from which the defendant's guilt of the charged crime can be reasonably inferred.  *Nelson v. State*, 880 N.W.2d 852, 859, 861 (Minn. 2016).  This requires showing that the defendant's conduct satisfies all elements of the offense to which he is pleading guilty.  *State v. Jones*, 921 N.W.2d 774, 779 (Minn. App. 2018) (citing *State v. Iverson*, 664 N.W.2d 346, 349-50 (Minn. 2003)), *rev. denied* (Minn. Feb. 27, 2019).  However, "[e]ven if an element to an offense is not verbalized by the defendant," a district court may draw inferences from the facts admitted to by the defendant.  *Rosendahl v. State*, 955 N.W.2d 294, 299 (Minn. App. 2021); *see State v. Thompson*, 544 N.W.2d 8, 11 (Minn. 1996) (stating intent "is generally proved by inferences drawn from a person's words or actions in light of all the surrounding circumstances.").

When determining whether the factual basis requirement for a guilty plea has been satisfied, a reviewing court must examine a defendant's admissions "in light of all surrounding circumstances and in the context of an entire plea colloquy."  *State v. Jones*, 7 N.W.3d 391, 396 (Minn. 2024).  Although "[t]he district court typically satisfies the factual basis requirement by asking the defendant to express in his own words what happened[,]" *Raleigh*, 778 N.W.2d at 94, the use of leading questions does not invalidate a guilty plea.  *Nelson*, 880 N.W.2d at 860.

Appellant pleaded guilty to felony fifth-degree possession of a controlled substance, which he was charged with pursuant to Minnesota Statutes section 152.025, subdivision 2(a)(1). A defendant is guilty of felony fifth-degree possession of a controlled substance if (1) he "unlawfully[1] possesses one or more mixtures containing a controlled substance,"[2] (2) he knew or believed that the substance was a controlled substance, and (3) the controlled substance had a weight of 0.25 grams or more. Minn. Stat. § 152.025, subds. 2(a)(1), 4(a) (2022).

Appellant argues that his plea is inaccurate because its factual basis does not establish that appellant *knowingly* possessed over 0.25 grams of methamphetamine without a legal excuse since, during the plea colloquy, he did not expressly state that he possessed the substance or that he knew it was methamphetamine at the time of the police search. Instead, appellant argues that he merely acknowledged telling the officer that the drugs were his, without affirming that statement's truth.

According to appellant, the factual basis offered at the plea hearing established only that:

> [appellant] was a passenger in a car, the police found a container with a substance in it, [appellant] understood at the time of the plea hearing that the substance was methamphetamine weighing 4.69 grams, he had no legal excuse to possess it, and he told the police that it was his.

---

[1] The word "unlawfully" means "possessing a controlled substance in a manner not authorized by law." Minn. Stat. § 152.01, subd. 20 (2024).
[2] Mixtures containing methamphetamine are controlled substances. Minn. Stat. § 152.02, subd. 3(d)(2) (2024).

Appellant argues that this does not amount to an admission that he knowingly possessed the methamphetamine, or that he knew the substance was methamphetamine at the time of possession. Rather, appellant argues that he merely "admitted that he previously told a police officer that he admitted it," without "admitting that he possessed the methamphetamine."

In response, respondent argues that appellant's guilty plea was accurate because appellant "admitted to sufficient facts to infer that he knew about the methamphetamine in the car and that he possessed the methamphetamine in the car." Both parties rely on *Rosendahl*, 955 N.W.2d at 299 (holding that, for a guilty plea, "[e]ven if an element to an offense is not verbalized by the defendant, a district court may nevertheless draw inferences from the facts admitted to by the defendant").

*Rosendahl* concerns two different pleas and the inferences the district court made in accepting them. *Id.* at 296 (emphasis omitted). The district court found the plea to first-degree burglary was accurate because the defendant's statement that he "went into [the victim's] house and . . . decided to go drink a beer" supported a reasonable inference that he committed theft. *Id.* at 298. In contrast, the *Rosendahl* defendant's plea to second-degree assault (fear) with a dangerous weapon was inaccurate, because there was insufficient evidence for the district court to infer intent to cause fear of bodily harm with a dangerous weapon; during the plea colloquy, the defendant admitted only that he hit the victim "with his hand once and then picked up a knife in the kitchen and put it into his pocket after hitting her and he believed [the victim] 'was fearful not of the knife but of [him].'" *Id.* at 299 (quotation marks omitted).

Appellant argues that his plea is more like the inaccurate assault plea in *Rosendahl* because appellant "did not admit to all the facts that made him guilty." Respondent argues that *Rosendahl* undermines appellant's argument because *Rosendahl* holds that no affirmative admission is required, and inferences drawn from the record are sufficient to support a guilty plea.

Unlike the defendant's inaccurate plea to the assault charge in *Rosendahl*, appellant made statements from which knowing possession of the methamphetamine may reasonably be inferred. Here, appellant admitted the substance was methamphetamine and that he "didn't have any legal excuse for possessing that methamphetamine." As in *Rosendahl*, where drinking the victim's beer implied theft, appellant's admission of unlawful possession supports an inference of knowing possession because one cannot admit to unlawful possession of an unknown or lawful substance. Therefore, although appellant did not directly admit to knowingly possessing over 0.25 grams of methamphetamine, the district court was permitted to infer such knowledge in the context of the entire plea colloquy. *See Rosendahl*, 955 N.W.2d at 299. This creates an adequate factual basis, rendering appellant's plea accurate and valid.

Although appellant correctly points out that the plea colloquy contained leading questions, those questions do not invalidate appellant's plea. While the use of exclusively leading questions to create a factual basis is discouraged, it has "'never [been] held that the use of leading questions automatically invalidates a guilty plea.'" *Nelson*, 880 N.W.2d at 860.

9

Thus, contrary to appellant's argument, his testimony and the facts alleged in the complaint provide an adequate factual basis to establish that he had the requisite knowledge to commit the offense of fifth-degree possession of a controlled substance. *See Trott*, 338 N.W.2d at 252 (holding that plea colloquy, complaint, and photographs of the victim's injuries established a sufficient factual basis because the "defendant, by his plea of guilty, in effect judicially admitted the allegations contained in the complaint."); *see also Budreau v. State*, No. A16-1248, 2017 WL 1316143, at *3 (Minn. App. Apr. 10, 2017) (holding that plea colloquy where defendant admitted to shooting victim at close range and agreed that facts in complaint could show intent was sufficient factual basis for requisite mental state for second-degree murder charge).

We conclude that an adequate factual basis was established to support appellant's guilty plea to felony fifth-degree possession of a controlled substance.

## II.    Voluntariness

Appellant also appears to argue that his plea was involuntary, and therefore invalid, because he had concerns about whether his lawyer was willing to "fight the case" for him. To determine whether a plea is voluntary, the court considers all relevant circumstances. *Raleigh*, 778 N.W.2d at 96. A plea is involuntary if the defendant is improperly pressured or induced to accept the plea agreement. *Trott*, 338 N.W.2d at 251. A guilty plea may be constitutionally invalid if the defendant received ineffective assistance of counsel. *State v. Bell*, 971 N.W.2d 92, 105 (Minn. App. 2022), *rev. denied* (Minn. Apr. 27, 2022).

Claims of ineffective assistance of counsel in the plea context are analyzed under the *Strickland* standard. *Ecker*, 524 N.W.2d at 718 (citing *Hill v. Lockhart*, 474 U.S. 52

(1985)). To meet this standard, the defendant must show: (i) that his counsel's representation fell below an objective standard of reasonableness and (ii) prejudice in the form of a reasonable probability that, but for counsel's unprofessional errors, the defendant would not have pleaded guilty. *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Butala v. State*, 664 N.W.2d 333, 341-42 (Minn. 2003). The court "need not address both the performance and prejudice prongs if one is determinative." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

Although appellant does not raise voluntariness in his statement of the legal issues, he argues that his plea "raised additional concerns related to the voluntariness of the plea, which could have been allayed by an accurate factual basis." However, a review of the record does not indicate that appellant was improperly pressured or coerced into pleading guilty—the record does not show, nor does appellant allege, any threats, promises outside the plea agreement, or pressure to plead guilty. *See* Minn. R. Crim. P. 15.01, subd. 1(4)(c).

At the September 11, 2024, hearing, appellant expressed dissatisfaction with his public defender, stating that his attorney was "unwilling to fight the case for [him]." In response, the district court granted a 30-day continuance for appellant to retain private counsel. However, at the following hearing on October 9, 2024, appellant did not raise further concerns about his counsel and proceeded with representation by his public defender. Thus, the record shows that appellant had the opportunity to change counsel and proceed to trial but instead chose to enter a plea.

At the final hearing on December 11, 2024, appellant entered a negotiated guilty plea to one count of fifth-degree possession of a controlled substance in exchange for

11

dismissal of the remaining charges and a stayed imposition of sentence. Appellant acknowledged that he understood the rights he was waiving, including the right to a jury trial and to challenge the legality of the search.

Appellant's brief does not assert an ineffective-assistance claim, and the record does not support such a claim. Although appellant voiced concern that his public defender was "unwilling to fight the case for [him]," the standard for counsel's performance is not determined by the defendant's concern but by whether counsel's conduct undermined the adversarial process. *Ecker*, 524 N.W.2d at 718. Here, the record shows that appellant voluntarily proceeded with an attorney from the public defender's office and entered into a plea agreement.

Even assuming for the sake of argument that counsel's performance was ineffective, appellant does not allege or demonstrate that he was prejudiced. Neither the record nor appellant's brief show that, but for his counsel's performance, appellant would have insisted on going to trial. He has not identified any potentially exculpatory evidence that was overlooked or any viable trial strategy that would have changed the outcome. *See Hill*, 474 U.S. at 59 (explaining possible instances of ineffective assistance causing prejudice). Instead, the record reflects that appellant voluntarily accepted a favorable plea agreement after being informed of his rights.

We conclude that appellant's plea was voluntary because he has not shown coercion or ineffective assistance of counsel. Accordingly, appellant's plea was valid, no manifest injustice exists, and he is not entitled to withdraw his guilty plea.

**Affirmed.**